UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------
SHADEED T. SMITH,

                Plaintiff,

      -against-

ALFONSO GRAY and DONLEN TRUST,

                Defendants.
---------------------------------------------------------

**MEMORANDUM & ORDER**
**19-CV-2169 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Shadeed T. Smith commenced this action against defendants Alfonso Gray and Donlen Trust, alleging that Gray's negligent operation of a vehicle owned by Donlen Trust caused him to strike a vehicle operated by Plaintiff and seriously injure Plaintiff. (Compl. (Dkt. 1-1) ¶¶ 5-9.) Plaintiff seeks to recover damages for the injuries he sustained pursuant to New York State's No-Fault Insurance Law ("No-Fault Law"). *See* N.Y. Ins. L. § 5104(a). Pending before the court is Defendant Gray's Motion for Summary Judgment. (Def. Mot. for Summ. J. (Dkt. 20); Def. Mem. in Supp. of Mot. for Summ. J. (Dkt. 26); Pl. Mem. in Opp. to Mot. for Summ. J. (Dkt. 22); Def. Reply Mem. in Supp. Of Mot. for Summ. J. (Dkt. 25).)

For the reasons set forth below, Defendant's motion is GRANTED with prejudice.

I. BACKGROUND

A. Factual Background[1]

Prior to the relevant accident in 2017, Plaintiff had been involved in three motor vehicle accidents in 2007, 2008, and 2015. (Def. R. 56.1 Stmt. ("Def. 56.1") (Dkt. 20-1) ¶ 5; Def. Resp. to Pl. R. 56.1 Stmt. ("Def. 56.1 Resp.") (Dkt. 24) ¶ 18.) After the 2015 accident, Plaintiff was diagnosed with lumbar radiculopathy, myofascitis, and bilateral shoulder derangement, and a subsequent MRI of his lumbar spine revealed disc bulges. (Def. 56.1 ¶¶ 6-7.) Plaintiff attended physical therapy to treat his neck, back, and bilateral shoulders three times a week for thirteen weeks. (*Id.* ¶ 6.) He missed five months of work while recovering from the 2015 accident. (*Id.* ¶ 8.) And at the time of the September 12, 2017 accident, he was still experiencing back pain. (*Id.*)

On September 12, 2017, a motor vehicle operated by Defendant Gray and owned by Defendant Donlen Trust struck a motor vehicle operated by Plaintiff at the intersection of West Houston Street and MacDougal Street in Manhattan (the "2017 accident"). (*Id.* ¶ 1.) The police and ambulance reports from the scene of the accident indicate that Plaintiff complained of neck pain, but not of other pain or injuries. (*Id.* ¶¶ 9-10.) Plaintiff was transported by ambulance to Beth Israel Medical Center, where he again complained only of neck pain. (*Id.* ¶ 11.) A physical examination at Beth Israel Medical Center did not indicate that he had sustained a back or shoulder injury. (*Id.*)

---

[1] The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All evidence is construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

One week after the 2017 accident, Plaintiff and his girlfriend traveled to Jamaica for three days. (*Id.* ¶ 12.) While in Jamaica, Plaintiff participated in recreational activities including white-water rafting and riding dune buggies. (*Id.*)

At the time of the 2017 accident, Plaintiff was employed full-time as a sanitation worker; he also worked as a driver for Uber. (*Id.* ¶¶ 21, 25.) Following the 2017 accident, Plaintiff missed approximately one month of work at the Sanitation Department. (*Id.* ¶ 23.) He returned to "light duty" in his first month back. (*Id.*) Thereafter, Plaintiff resumed his regular sanitation duties without limitations. (*Id.* ¶ 24.) Regular sanitation duties involve lifting garbage cans that may weigh between 5 and 50 lbs. (*Id.* ¶ 22.) Plaintiff estimates that he also missed one-and-a-half to two months of work as an Uber driver after the accident, and that he resumed driving for Uber in late October or early November of 2017. (*Id.* ¶ 26.)

On October 19, 2017, approximately one month after the 2017 accident, Plaintiff visited Dr. David Abbatemetteo and complained of back and bilateral shoulder plan. (*Id.* ¶ 13.) Dr. Abbatematteo found that Plaintiff's range of motion in his left shoulder was somewhat restricted. (*Id.*)

Plaintiff underwent four MRIs in fall 2017, which revealed tears of the posterior labrum and infraspinatus tendon in his right shoulder, a tear of the anterior labrum in his left shoulder, central disc herniation and bulging discs in his cervical spine, and a posterior disc bulge in his lumbar spine. (Def. 56.1 Resp. ¶ 9.) On January 22, 2019, Plaintiff underwent surgery on his left shoulder with Dr. Thomas A. Scilaris, an orthopedic surgeon. (*Id.* ¶¶ 5, 10.) Plaintiff also underwent steroid injections for his lumbar spine and both shoulders, on the recommendations of two different spinal surgeons, Dr. Charles Kaplan and Dr. Sebastian Lattuga. (*Id.* ¶¶ 6-7.)

On July 9, 2019, Dr. Andrew Farber conducted an orthopedic examination of Plaintiff for a worker's compensation claim. (Def. 56.1 ¶ 15.) Dr. Farber observed that Plaintiff's range of motion in his shoulders was normal or close to normal, and that no spasms or atrophies were noted in the lumbar spine or cervical spine. (*Id.* ¶ 16; Farber Report (Dkt. 20-14) at 5-6.) He also concluded that Plaintiff had no disability and was capable of working without restrictions. (Def. 56.1 ¶ 16.)

On January 6, 2020, Dr. Ramesh Gidumal conducted an orthopedic examination of Plaintiff's shoulders and reviewed Plaintiff's medical records. (*Id.* ¶¶ 19-20.) He observed that Plaintiff had full range of motion in all directions, normal external rotation strength, no visible atrophy, and no pain or tenderness. (*Id.*; Gidumal Report (Dkt. 20-16) at 4.) Dr. Gidumal expressed the medical opinion that Plaintiff's rotator cuff tear, labral tear, and inflammation were results of a documented impingement syndrome, which was a non-traumatic condition that could not have been related to the 2017 accident. (Gidumal Report at 5.)

On February 6, 2020, Dr. Adam Bender performed a neurological examination of Plaintiff's head, neck, and spine. (Def. 56.1 ¶ 17.) Dr. Bender observed normal range of motion in Plaintiff's spine, and he expressed the opinion that the injuries to Plaintiff's cervical and lumbar spine revealed by the MRIs were degenerative and could not have resulted from the 2017 accident. (*Id.* ¶ 18; Bender Report (Dkt. 20-15) at 7-8.)

On March 5, 2020, Dr. Donald I. Goldman performed a neurological examination of Plaintiff. (Def. 56.1 Resp. ¶ 11.) Dr. Goldman found that Plaintiff had sustained a 13% loss of abduction and a 22-28% loss of external rotation in his left shoulder; and a 33% loss of extension, 25% loss of right rotation, 30% loss of left lateral bending, and 50% loss of right lateral bending in his cervical spine. (*Id.* ¶¶ 11-12; Goldman Report

(Dkt. 22-7) at 2-3.) Dr. Goldman expressed his "opinion, to a reasonable degree of medical certainty, [that] the injuries to both [Plaintiff's] cervical [spine] and left shoulder were causally related to the accident of September 12, 2017, and at this time should be considered permanent." (Goldman Report at 5.)

Plaintiff was involved in another motor vehicle accident in 2018, in which he injured his neck. (Def. 56.1 Resp. ¶ 19.) He has not injured his back, left shoulder, or right shoulder since the 2017 accident. (*Id.* ¶ 20.)

### B. Procedural Background

Plaintiff filed this action on July 16, 2018 in New York Supreme Court, Kings County. (Compl. at 1.) Defendants Gray and Donlen Trust removed this action to federal district court on April 12, 2019. (Not. of Removal (Dkt. 1) at 1-2.) On April 6, 2020, pursuant to a liability stipulation between the parties, the court dismissed all claims against Donlen Trust. (Stip. of Dismissal (Dkt. 15).) On October 9, 2020, Defendant Gray filed a fully briefed motion for summary judgment. (*See* Def. Mot. for Summ. J. (Dkt. 20).)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[2] The movant bears the

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

burden of demonstrating the absence of a question of material fact.

"The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

### III. DISCUSSION

#### A. New York's No-Fault Insurance Law

New York's No-Fault Law precludes plaintiffs from recovering for non-economic loss resulting from a motor vehicle accident unless they have suffered a "serious injury." N.Y. Ins. Law § 5104(a). Section 5102(d) defines "serious injury" as a personal injury which results in:

1) Death;
2) Dismemberment;
3) Significant disfigurement;
4) A fracture;
5) Loss of a fetus;
6) Permanent loss of use of a body organ, member, function or system;

    7) Permanent consequential limitation of use of a body organ or member;

    8) Significant limitation of use of a body function or system; or

    9) A medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

*Id.* § 5102(d).

To recover for non-economic losses under the No-Fault Law, a plaintiff must show two things: (1) they sustained a "serious injury"; and (2) the injury was "proximately caused by the accident at issue." *Kang v. Romeo*, No. 18-cv-4033 (ARR) (SMG), 2020 WL 4738947, at *8 (E.D.N.Y. Aug. 14, 2020) (quoting *Evans v. United States*, 978 F. Supp. 2d 148, 164 (E.D.N.Y. 2013)).

### B. Serious Injury

"[A] court should decide the threshold question of whether the evidence would warrant a jury finding that the injury qualifies as a 'serious injury.'" *Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (citing *Licari v. Elliott*, 57 N.Y.2d 230, 236 (N.Y. 1982)). "[O]n summary judgment, a defendant must establish a prima facie case that the plaintiff did not sustain a serious injury . . . [and] the plaintiff is then required to establish a prima facie case that he sustained a serious injury." *Id.* (quoting *Barth v. Harris*, No. 00-cv-1658, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)). A defendant may meet their initial burden "by providing a physician's report that concludes, based upon objective evidence, that the plaintiff either has no injuries or has recovered from them." *Kang*, 2020 WL 4738947, at *9.

In rebutting a defendant's prima facie case and showing that there is a disputed issue of material fact, the plaintiff "must present objective proof of injury, as subjective complaints of pain will not, standing alone, support a claim for serious injury." *Yong Qin Luo*, 625 F.3d at 777; *see also Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 350 (N.Y. 2002). A plaintiff may rely upon "a numeric percentage of a plaintiff's loss of range of motion," or "qualitative assessment . . . provided that the valuation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Toure*, 98 N.Y.2d at 350. When a plaintiff presents "sufficient objective evidence from which a jury could find that he or she sustained a serious injury, summary judgment must be denied notwithstanding some contrary probative evidence." *Rivera v. United States, No.* 10-cv-5767 (MHD), 2012 WL 3132667, at *10 (S.D.N.Y. July 31, 2012).

Plaintiff Smith has not alleged that the 2017 accident gave rise to injuries causing death; dismemberment; significant disfigurement; a fracture; the loss of a fetus; the permanent loss of use of a body organ, member, function, or system; or the permanent consequential limitation of use of a body organ or member. *See* N.Y. Ins. Law § 5102(d). The parties dispute whether the 2017 accident caused Plaintiff to suffer either of the two remaining categories of serious injury: the significant limitation of use of a body function or system, or a non-permanent injury that represents a sufficiently extensive interference with the injured person's daily activities. *See id.*

> 1. Significant Limitation of Use of a Body Function or System

New York law requires more than a minor limitation of use to show a significant injury. *See Kang*, 2020 WL 4738947, at *10. "[A] plaintiff must show a limitation that is significant in terms of duration as well as degree." *Id.* at *11 (quoting *Hodder v.*

*United States*, 328 F. Supp. 2d 335, 354-55 (E.D.N.Y. 2004)). "While there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes." *Hodder*, 328 F. Supp. 2d at 356; *cf. Young Sung Lee v. Garvey*, 718 F. App'x 11, 15 (2d Cir. 2017) (citing *Hodder* in concluding that 10% limitation in range of motion does not rise to the level of a serious injury).

Defendant submitted reports by his medical experts, who conducted independent medical examinations of Plaintiff. Dr. Gidumal, who based his conclusions on a physical examination and review of Plaintiff's MRIs, indicated Plaintiff's "shoulders revealed a full range of motion in all directions actively and passively." (Gidumal Report (Dkt. 20-16) at 4-5.) Dr. Bender, who performed a neurological examination of Plaintiff, observed no neurological issues and concluded that the injuries to the cervical and lumbar spine depicted in the MRIs were "degenerative changes which could not have resulted from the incident of record as described." (Bender Report (Dkt. 20-15) at 8-10.) Based on these reports, Defendant has established his prima facie case that Plaintiff did not suffer the significant limitation of use of a body function or system as a result of the 2017 accident.

But Plaintiff offers sufficient medical evidence to rebut Defendant's prima facie case. In particular, the report by Dr. Goldman, based on a physical examination that included range-of-motion tests, found that Plaintiff sustained "painful functional restriction[s] of motion by more than 25%" in his cervical spine and by more than 25% in his left shoulder. (Goldman Report (Dkt. 22-7) at 4.)

The parties' conflicting evidence therefore raises questions of fact as to whether Plaintiff's use of his cervical spine and left shoulder

9

was significantly limited as a result of the 2017 accident.[3] *See Toure*, 98 N.Y.2d at 353; *see also Williams v. Ritchie*, 139 F. Supp. 2d 330, 340 (E.D.N.Y. 2001) ("a medical affidavit specifying 'the degree of restriction of movement suffered' and 'the objective tests performed to determine such restriction of movement'" is sufficient to establish consequential limitation) (quoting *Merisca v. Alford*, 663 N.Y.S.2d 853, 854 (2d Dep't 1997)). Plaintiff thus overcomes his first hurdle and rebuts Defendant's prima facie case with respect to the existence of a qualifying serious injury case, leaving only whether a genuine dispute of material fact exists as to the proximate cause of that injury.

### 2. Interference with Daily Activities

Plaintiff also alleges that he sustained a serious injury because his injuries prevented him from "performing substantially all of the material acts which constitute [his] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d). Courts have interpreted "substantially all" in this context to require that the injured person be "prevented from performing his or her usual activities to a great extent, rather than some slight curtailment." *Escoto v. United States*, 848 F. Supp. 2d 315, 330 (E.D.N.Y. 2012). To prove the requisite interference with daily activities, a plaintiff must submit competent evidence to support the claim that he or she was unable to perform substantially all of his or her usual activities to a great extent for no less than 90 of the 180 days following the subject accident. *Id.* A plaintiff's own unsubstantiated testimony is insufficient to raise a genuine dispute of material fact. *Id.*

---

[3] While Plaintiff also claims to have injured his right shoulder and lumbar spine as a result of the 2017 accident, he does not rebut Defendant's prima facie case with respect to those alleged injuries.

10

Plaintiff contends that, as a result of the 2017 accident, he has experienced lingering difficulties sitting for long periods of time, walking long distances, running, lifting heavy items, performing household chores, sleeping, tying his shoes, showering, taking public transportation, exercising, and running errands. (Pl. Mem. in Opp. to Mot. for Summ. J. at 38.) But Plaintiff fails to provide any medical evidence that corroborates the claim that he was (or even is) unable to perform these activities for the requisite period of time. Moreover, the record establishes that Plaintiff returned to light duty work at the Sanitation Department about one month after the 2017 accident, and he resumed regular duties as a sanitation worker—including lifting garbage cans and bags of garbage that may weigh up to 50 lbs.—about two months after the accident. (Def. 56.1 ¶¶ 21-24.) Plaintiff therefore fails to establish the existence of a genuine dispute of material fact as to whether he suffered a serious injury by virtue of a prolonged interference with his performance of substantially all acts that constitute his daily activities.

### C. Causation

Plaintiff has established the existence of a genuine dispute of material fact as to whether he suffered a qualifying serious injury based on the significantly limited use of his cervical spine and left shoulder. But Plaintiff must also show that "the injury was proximately caused by the accident at issue." *See Kang*, 2020 WL 4738947, at *8. "[E]ven where there is objective medical proof" of a plaintiff's injury, "when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate." *Pommells v. Perez*, 830 N.E.2d 278, 281 (N.Y. 2005).

A defendant moving for summary judgment may presumptively establish a lack of proximate causation by introducing "persuasive evidence" of a plaintiff's pre-existing injuries. *See Evans*, 978 F. Supp. 2d at 164; *Arenes v. Mercedes Benz Credit Corp.*, No. 03-cv-5810 (NG) (MDG), 2006 WL 1517756, at *8 (E.D.N.Y. June 1, 2006); *Pommells*, 830 N.E.2d at 287. If the defendant meets that burden, the "plaintiff ha[s] the burden to come forward with evidence addressing [the] defendant's claimed lack of causation," and summary dismissal of the complaint may be appropriate absent such evidence. *Pommells*, 830 NE.2d at 287; *Arenes*, 2006 WL 1517756, at *8.

Self-serving statements by a plaintiff or conclusory statements by medical experts are insufficient to show causation; such statements must be corroborated by objective medical evidence. *See Kang*, 2020 WL 4738947, at *8. An expert's opinion on causation is "conclusory" if the expert "opines, in conclusory fashion, that [a] [p]laintiff's . . . injury is 'causally related' to the [ ] accident, but offers no explanation or rationale for that opinion." *See Manzi v. Davey Tree Expert Co.*, 977 F. Supp. 2d 150, 158 (E.D.N.Y. 2013); *Carter v. Full Serv.*, 815 N.Y.S.2d 41, 43 (1st Dep't 2006) ("[I]n the absence of an explanation of the basis for concluding that the injury was caused by the subject accident, and not by other possible causes evidenced in the record, an expert's conclusion that plaintiff's condition is causally related to the subject accident is mere speculation insufficient to support a finding that such a causal link exists."); *see also Farook v. Bailey*, No. 05-cv-3785 (LTS) (DF), 2007 WL 2076764, at *3 (S.D.N.Y. July 16, 2007) (expert medical opinion was not speculative where it "specifically discusse[d] the pre-accident evidence proffered by Defendants in reaching the conclusion that the [relevant] accident caused Plaintiff's injury, rather than an earlier accident").

Here, Defendant has satisfied his initial burden of presenting persuasive evidence that Plaintiff's injuries predate the 2017

12

accident. Dr. Gidumal's report observes that the MRIs of Plaintiff's right and left shoulders show damage consistent with age degeneration or a longstanding injury from an older accident, and that they do not show bleeding, tearing, or bone marrow edema, as one would expect to see in the case of a recent traumatic injury. (Gidumal Report at 5.) Similarly, Dr. Bender's report observed that the MRIs of Plaintiff's lumbar and cervical spine showed degenerative changes that would not have resulted from the 2017 accident, and that a 2015 MRI of Plaintiff's lumbar spine showed bulging discs. (Bender Report at 2, 8-9.) This evidence persuasively suggests that Plaintiff's injuries were caused by degeneration and the prior accidents, rather than by the 2017 accident. *See Boyarski v. Karczewski*, No. 17-cv-6282 (FPG), 2019 WL 3816560, at *3 (W.D.N.Y. Aug. 14, 2019) (determining that defendant's initial burden was satisfied by physician reports concluding from post-accident MRIs that plaintiff's injuries were degenerative, as well as evidence that plaintiff complained of arthritic pain before the accident and did not report pain to treating doctors on the day after the accident); *Gay v. Cevallos*, No. 10-cv-949 (LMM), 2011 WL 2015528, at *3, *5-6 (S.D.N.Y. May 17, 2011) (finding initial burden satisfied by defendant's doctors' determination that plaintiff's post-accident MRIs and physical examination revealed only degenerative disc disease and longstanding pathology).

By contrast, Plaintiff's evidence that his injuries arose from the 2017 accident is largely conclusory. Plaintiff alleges that he had no residual injuries from prior accidents at the time of the 2017 accident—but his self-serving statements are insufficient to establish causation absent corroborating objective evidence. Dr. Goldman's report expresses the opinion that the "injuries to both his cervical and left shoulder were causally related to the accident of September 12, 2017"—but it fails to explain the basis for that conclusion. (Goldman Report at 5.) The affirmations by Dr. Scilaris, Dr. Lattuga, and Dr. Kaplan similarly express, in near

13

identical language, the "medical opinion that [Plaintiff's] injuries . . . are causally related to his accident of 9/12/17 and not due to a pre-existing condition or degeneration"—but none of their affirmations or accompanying reports offers a medical basis or explanation for that opinion. (Scilaris Affirmation (Dkt. 22-4) at ECF p. 2; Lattuga Affirmation (Dkt. 22-5) at ECF p. 2; Kaplan Affirmation (Dkt. 22-6) at ECF p. 2.) Plaintiff's want of corroborating objective evidence to support his self-serving statements and his medical experts' reports cripples Plaintiff's causation claim. *See Kang,* 2020 WL 4738947, at *8 (collecting cases).

Accordingly, Plaintiff has failed to rebut the presumption, established by Defendant's evidence, that degeneration and the prior accidents, namely the 2015 accident—rather than the 2017 accident—was the proximate cause of his cervical spine and left shoulder injuries. Because Plaintiff cannot establish a genuine dispute of material fact regarding the issue of causation, he cannot prevail in his action, and Defendant is entitled to judgment as a matter of law.

### IV. CONCLUSION

For the reasons stated above, Defendant's (Dkt. 20) Motion for Summary Judgment is GRANTED with prejudice. The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated:   Brooklyn, New York
         August 13, 2021

                                           /s/ Nicholas G. Garaufis
                                           NICHOLAS G. GARAUFIS
                                           United States District Judge

14